UNITED STATES DISTRICT COURT

Northern District of California

LEVI STRAUSS & CO.,

        Plaintiff,

   v.

TOYO ENTERPRISE CO., LTD., *et al.*,

        Defendants.

_____/

No. C 07-00245 PJH (MEJ)

**REPORT AND RECOMMENDATION RE PLAINTIFF LEVI STRAUSS & CO.'S REQUEST FOR ENTRY OF DEFAULT JUDGMENT [Dkt. #47]**

## I. INTRODUCTION

Pending before the Court is Plaintiff Levi Strauss & Co.'s Request for Entry of Default Judgment ("the Motion") against Defendants Samurai Co., Ltd.; Studio D'Artisan International Co., Ltd.; Full Count Co.; and John Bull Co., Ltd. (collectively, "Defendants"). (Dkt. #47.) In its Motion, Plaintiff requests that the Court grant default judgment against Defendants and, further, issue a permanent injunction prohibiting Defendants from manufacturing, distributing, or selling any goods that infringe on Plaintiff's trademarks. None of the Defendants has filed an Opposition or otherwise appeared in this action. On February 4, 2009, the presiding judge in this matter, the Honorable Phyllis J. Hamilton, issued an order referring the Motion to the undersigned for preparation of a Report and Recommendation. (Dkt. #48.) On June 11, 2009, the undersigned held a hearing on Plaintiff's Motion. After consideration of Plaintiff's Motion, supporting materials, and oral argument, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's Motion and enter default judgment against Defendants on each of Plaintiff's claims. The undersigned further **RECOMMENDS** that the Court enter a permanent injunction against Defendants consistent with the language set forth herein.

## II. BACKGROUND

**A.   Factual Background**

On July 12, 2007, Plaintiff initiated this action by filing a Complaint against eight defendants. (Dkt. #1.) On July 25, 2007, Plaintiff filed its First Amended Complaint against eleven named defendants, including the defaulting Defendants. (Dkt. #16 ("FAC").) The relevant facts, taken from Plaintiff's First Amended Complaint are as follows.

Plaintiff manufactures, markets, and sells a variety of apparel, including denim blue jean products. (FAC ¶ 7.) Plaintiff markets its LEVI'S® brand products with a set of trademarks that are well-known throughout the world. (FAC ¶19.) For many years prior to the events giving rise to this case and continuing to the present, Plaintiff has spent great mounts of time, money, and effort advertising and promoting the products on which the trademarks are used, and has sold many millions of these products all over the world, including in the United States and in California. (FAC ¶ 19.) Through this investment and large sales, Plaintiff has created considerable goodwill and a reputation for quality products. (FAC ¶19.) Plaintiff has continuously used these trademarks, some for well over a century, to distinguish its products. (FAC ¶ 19.)

Plaintiff's trademarks are federally-registered, in full force and effect, and exclusively owned by Plaintiff. (FAC ¶ 20.) Particularly, Plaintiff owns: (1) the Arcuate Stitching Design Trademark; (2) the Tab Device Trademark; (3) the Shirt Tab Device Trademark; (4) the Housemark Design Trademark; (5) the Two Horse Design and Two Horse Label Design Trademarks; and (6) the 500 Series Trademarks. (FAC ¶¶ 23, 26, 28, 30, 32, 34.)

Plaintiff owns the Arcuate Stitching Design Trademark (the "Arcuate trademark"), which consists of a distinctive pocket stitching design that is the oldest known apparel trademark in the United States. (FAC ¶ 22.) Plaintiff has used the Arcuate trademark continuously since 1873 in interstate commerce on clothing products. (FAC ¶ 22.) It first used the Arcuate trademark on jeans, and later began using it on trousers, pants, shorts, skirts, and jackets. (FAC ¶ 22.) Plaintiff owns the following United States and California Registrations for its Arcuate trademark: (a) U.S. Registration

No. 1,139,254; (b) U.S. Registration No. 404,248[1] (c) U.S. Registration No. 2,791,156; U.S. (d) Registration No. 2,794,649; and (e) California Registration No. 088399.  (FAC ¶ 23 & Ex. B.)

Plaintiff also owns the Tab Device Trademark, which consists of a distinctive marker of textile or other materials sewn into one of the regular structural seams of the garment. (FAC ¶ 24 & Ex. C.)  Plaintiff has used the Tab Device trademark continuously since 1936 in interstate commerce on clothing products.  (FAC ¶ 24.)  Plaintiff owns the following United States Registrations for its Tab Device trademark: (a) U.S. Registration No. 356,701; (b) U.S. Registration No. 516,561; (c) U.S. Registration No. 577,490; (d) U.S. Registration No. 774,625; (e) U.S. Registration No. 775,412; and (f) U.S. Registration No. 1,157,769.  (FAC ¶ 26 & Ex. D.)  Plaintiff avers that these Registrations have become incontestable under 15 U.S.C. § 1065.  (FAC ¶ 26.)

Plaintiff also owns the Shirt Tab Device Trademark, which consists of a distinctive tab affixed to the exterior of a shirt pocket.  (FAC ¶ 27.)  Plaintiff has used the mark in interstate commerce continuously since 1969.  (FAC ¶ 27.)  Plaintiff owns the following United States and California Registrations for the Shirt Tab Device:  (a) U.S. Registration No. 2,726,253; and (b) California Registration No. 052312.  (FAC ¶ 28 & Ex. F.)

Additionally, Plaintiff owns the Housemark Design Trademark ("Housemark trademark"), a distinctive logo originally adopted to identify genuine LEVI'S® products, first used in 1966.  (FAC ¶ 29 & Ex. H.)  Plaintiff owns the following United States Registrations for the Housemark Design: (a) U.S. Registration 849,437; (b) U.S. Registration No. 1,135,196; (c) U.S. Registration No. 1,041,846; (d) U.S. Registration No. 1,122,468; and (e) U.S. Registration No. 1,155,926.  (FAC ¶ 30 & Ex. H.)  Plaintiff alleges the Housemark trademark is incontestable under 15 U.S.C. § 1065.  (FAC ¶ 30.)

Plaintiff also owns the Two Horse Design and Two Horse Label Design Trademarks ("Two Horse trademarks"), which were also adopted to identify genuine LEVI'S® products, first used in 1866.  (FAC ¶ 31 & Ex. I.)  Plaintiff owns the following United States Registrations for the Two

---

[1] Plaintiff alleges that the Registration Nos. 1,139,254 and 404,248 have become incontestable under the provisions of 15 U.S.C. § 1065.

1 Horse Trademarks:  (a) U.S. Registration 523,665; and (b) 1,140,853.  (FAC ¶ 32 & Ex. J.)  Plaintiff
2 alleges the Two Horse trademarks are incontestable under 15 U.S.C. § 1065.  (FAC ¶ 32.)

3    Finally, Plaintiff owns the 500 Series trademarks.  The marks consist of three digit numbers
4 beginning with the number "5" (*e.g.* 501®, 505®, 517®, and 569®).  (FAC ¶ 33 & Ex. K.)  Plaintiff
5 owns the following United State Registrations for the 501 Series trademarks:  (a) U.S. Registration
6 No. 1,552,985; (b) U.S. Registration No. 1,313,554; (c) U.S. Registration No. 1,319,462; and (d)
7 U.S. Registration No. 2,503,976.  (FAC ¶ 34 & Ex. L.)  Plaintiff alleges the 501®, 505®, and 517®
8 trademarks are incontestable under 15 U.S.C. § 1065.  (FAC ¶ 34.)

9    Defendants Samurai, Studio D'Artisan, Full Count, and John Bull are all Japanese business
10 entities.  (FAC ¶¶ 9, 10, 13, 14.)  According to Plaintiff, each of the Defendants manufactured,
11 offered for sale, advertised, and sold jean and other garments that imitate a number of trademarks
12 Plaintiff has used for many years to identify its LEVI'S® brand products around the world.  (FAC,
13 ¶¶ 9, 10, 13, 14 & Exs. N, O, R, S.)  Defendants have sold their clothing through authorized retailers
14 in San Francisco and New York, and through their own websites over the Internet.  (Dkt. #66 ¶¶ 2-
15 6.)  Plaintiff alleges Defendants' manufacturing, sourcing, marketing, and selling have caused and
16 continue to cause actual consumer confusion resulting in irreparable harm to Plaintiff.  (FAC ¶¶ 37,
17 39, 45, 47, 57, 58.)

18    Based on the foregoing allegations, Plaintiff asserts claims against Defendants for: (1)
19 Federal Trademark Infringement under 15 U.S.C. §§ 1114-1117, Lanham Act §32; (2) False
20 Designation of Origin and False Description under 15 U.S.C. § 1125(a), Lanham Act § 32(a); (3)
21 Federal Dilution of Famous Marks under 15 U.S.C. § 1125(c), Lanham Act § 43(c); (4) California
22 Dilution and Trademark Infringement under California Business and Professions Code §§ 14320,
23 14330, 14335, 14340; and (5) California Unfair Competition under California Business and
24 Professions Code § 17200.
25 / / /
26 / / /
27
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

4

**B.     Procedural Background**

Plaintiff filed its First Amended Complaint on July 25, 2007.  (Dkt. #16.)  The FAC and summons was served on each of the Defendants by international certified mail, return receipt request, but none of them answered or otherwise responded to the FAC.  (Dkt. #44.)  On February 20, 2009, the clerk entered default against Defendants.  (Dkts. #49-50.)  On February 4, 2009, Plaintiff filed its Motion for Default Judgment against Defendants.  (Dkt. #47.)  On June 11, 2009, the Court conducted a hearing on the matter.

### III.  DISCUSSION

**A.     Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. The court has discretion in determining whether to grant or deny a motion for default judgment.  *Draper v. Coombes*, 792 F.2d 915, 924-25 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980).

The Ninth Circuit has enumerated the following factors to assist courts in determining when entry of default judgment is appropriate: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c):  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

**B.     Jurisdiction**

When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)**.** The undersigned will therefore assess whether the Court has subject matter jurisdiction over this action, whether personal jurisdiction exists over the Defendants, and whether Plaintiff effected proper service of process.

1.  Subject Matter Jurisdiction

District courts have original jurisdiction to hear civil cases arising under the Constitution, laws or treaties of the United States. 28 U.S.C. § 1331. As indicated above, Plaintiff has asserted trademark claims arising under federal law. Accordingly, the District Court may properly exercise jurisdiction over this matter pursuant to § 1331. Furthermore, because Plaintiff's state law claims "are so related to [the] claims" within the Court's original jurisdiction, the Court may also properly exercise supplemental jurisdiction over Plaintiff's's state law claims pursuant to 28 U.S.C. § 1367(a).

2.  Personal Jurisdiction

As the party seeking to invoke this Court's jurisdiction, Plaintiff bears the burden of establishing that this Court has personal jurisdiction over Defendants. *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). In this case, Plaintiff contends that the Court has specific personal jurisdiction over Defendants. (Dkt. #70 at 3.) In the Ninth Circuit, "[p]ersonal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *See id.* at 801. Therefore, absent traditional bases for personal jurisdiction ( *i.e.*, physical presence, domicile, and consent), the Due Process Clause requires that nonresident defendants have certain "minimum contacts" with the forum state, "such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Ninth Circuit has articulated a three-prong test to determine whether a party has

6

sufficient minimum contacts to be susceptible to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction in the forum or resident thereof; or person some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

With respect to the first prong, it is satisfied by either purposeful availment or purposeful direction, which are "two distinct concepts." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802. In this matter, Plaintiff asserts claims for trademark infringement and dilution, which are generally characterized as sounding in tort. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Wyatt Tech. Corp. v. Smithson*, No. CV 05-1309 WMB, 2005 WL 6132329, at *3 (C.D. Cal. Aug. 30, 2005). Accordingly, purposeful direction is the proper analytical framework in this action. *See id.*

        *a.    Purposeful Direction*

To evaluate purposeful direction, the Court applies a three-part *Calder*-effects" test, articulated in the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803. Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (internal quotes omitted). There is no requirement that the defendant have any physical contacts with the forum. *See Schwarzenegger*, 374 F.3d at 803.

As to the first factor, Plaintiff contends that Defendants committed intentional acts by

7

1  manufacturing and selling products that directly infringe on its trademarks. (Dkt. #70 at 4, citing
2  FAC ¶¶1, 64, 72, 75.) With respect to the second factor, Plaintiff argues that, because its principal
3  place of business is in San Francisco and because it advertises and sells trademarked LEVIS®
4  products in California - facts which Defendants, as competitors in the jeans market were aware of -
5  Defendants' infringing conduct was directly aimed at California. (*Id*. at 5.) Finally, because
6  Plaintiff is based in San Francisco, the harm to its business and reputation from Defendants'
7  manufacturing and selling of infringing products was suffered by Plaintiff in California. (*Id*.)
8  Taking these facts into consideration, the undersigned finds that Plaintiff has sufficiently shown that
9  Defendants purposefully directed their conduct at California.

          *b.*      *Forum Related Activities*

11  The second prong of the specific jurisdiction analysis requires that the plaintiff's claims arise
12  from the defendant's forum-related activities. *See Panavision Int'l,* 141 F.3d at 1322. The
13  requirement is satisfied if the plaintiff would not have been injured "but for" the defendant's forum-
14  related conduct. *See id*; *Meyers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2000). Here,
15  Plaintiff has sufficiently shown that, absent Defendants' sale of infringing garments in California, its
16  claims would not have arisen. The undersigned thus finds that Plaintiff has satisfied this factor.

          *c.*      *Reasonableness*

18  The final prong assesses the reasonableness of exercising jurisdiction over the defendant.
19  "Even if the first two requirements are met, in order to satisfy the Due Process Clause, the exercise
20  of personal jurisdiction must be reasonable." *Panavision Int'l L.P.*, 141 F.3d at 1322 (citing *Ziegler*
21  *v. Indian River County*, 64 F.3d 470, 474-75 (9th Cir. 1995)). For jurisdiction to be reasonable, it
22  must comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S.
23  462, 476 (1985). "[W]here a defendant who purposefully has directed his activities at forum
24  residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some
25  other considerations would render jurisdiction unreasonable." *Core-Vent Corp. v. Nobel Indus. AB*,
26  11 F.3d 1482, 1487 (9th Cir. 1993) (citing *Burger King*, 471 U.S. at 476-77). Here, because
27  Defendants have not appeared, they have not raised any challenge to the reasonableness of the
28

8

Court's exercise of jurisdiction over them. Based on the current record, the undersigned does not see any compelling reason why the Court should decline to exercise jurisdiction over Defendants.

### *d.     Conclusion*

In sum, based on the foregoing analysis, the undersigned finds that Plaintiff has sufficiently established that the Court may properly exercise specific jurisdiction over Defendants in this action.

3.     Service of Process

Finally, the undersigned must assess whether Plaintiff properly effected service of process upon Defendants. Plaintiff indicates that, on Febraury 15, 2006, it served each of the Defendants with the First Amended Complaint and Summons by international certified mail, return receipt requested. (Dkt. ##23-26.) Plaintiff filed proofs of service for Defendants Samurai, John Bull, and Full Count on March 3, 2008, and for Studio D'Artisan on March 5, 2008. Thus, the question is whether this manner of service is valid.

The Hague Convention governs service of summons on defendants in foreign countries that are signatories to the treaty. Japan is a signatory to the Hague Convention. Thus, service on Japanese defendants - such as the Defendants in this case - must comport with the Hague Convention's methods for international service of process. Article 10(a) of the Hague Convention authorizes judicial documents to be "sent" by mail, "provided the State destination does not object." Japan has not stated any objection to Article 10(a). *See Fireman's Fund Ins. Co. v. Fuji Elec. Sys. Co., Ltd.*, No. C-04-3627 MMC, 2005 WL 628034, at *3 (N.D. Cal. March 17, 2005). Consequently, service of process by international mail to Japan is allowed under the Hague Convention. *See id.,* at *3-4; *Naya Tech. Corp. v. Fujitsu Ltd.*, No. CIV 06-00025, 2007 WL 269087, at *3-5 (D. Guam Jan. 26, 2007); Newport Co*mponents, Inc. v. NEC Home Elecs., Inc.*, 671 F. Supp. 1525, 1541-43 (C.D. Cal. 1987) (recognizing service by direct mail on Japanese defendant valid under California service rule).

Because Article 10(a) does not affirmatively authorize international mail service, a court "must look outside the Hague Convention for affirmative authorization of the international mail service that is merely not forbidden by Atricle 10(a)." *Brockheyer v. May*, 383 F.3d 798, 804 (9th

Cir. 2004). Such affirmative authorization of service by international mail "must come from the law of the forum in which the suit is filed." *Id*. In this case, that source is Federal Rule of Civil Procedure 4.

Under to Rule 4(h), foreign corporations residing outside of a United States judicial district may be served in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i). Pursuant to Rule 4(f), unless prohibited by the foreign country's law, service may be effected by "using any form of mail that the clerk addresses and send to the individual and that requires a signed receipt." Fed. R. Civ. P. 4(f)(2)(C)(ii). Here, Plaintiff has filed affidavits attesting that the Clerk of the Court sealed and mailed to Defendants packets containing a Summons, the First Amended Complaint, ADR instructions, and the Court's Case Management State form,. (Dkt. ##23-26, Ex. A.) Additionally, each affidavit included as an exhibit a signed return receipt from each Defendant. (Dkt. ##23-26, Ex. A.) Thus, Plaintiff complied with the requirements sets forth in Rule 4(f)(2)(C)(ii). The undersigned concludes that Plaintiff properly effected service of process of Defendants.

**C.     Application of the *Eitel* Factors to the Case at Bar**

1.     Prejudice to Plaintiff

Under the first *Eitel* factor, the court must examine whether Plaintiff will suffer further prejudice if its default judgment is not granted. *Eitel*, 782 F.2d at 1471-72. Plaintiff contends that if the Court denies its request for default Judgement and request for a permanent injunction, it will be unable to prevent continued infringement and dilution of its marks by Defendants. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The undersigned finds Plaintiff's argument to be well-taken. Accordingly, the Court finds that this factor weighs in favor of granting default judgement.

2.     Sufficiency of the Complaint and Likelihood of Success on the Merits

The second and third *Eitel* factors assess whether a plaintiff has plead facts sufficient to maintain its claims, and each claims' likelihood of success. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). The Court must therefore examine each of Plaintiff's claims.

10

*a.     Federal Trademark Infringement*

Plaintiff's first claim for relief is for federal trademark infringement pursuant to 15 U.S.C. §§ 1114-1117.  To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must establish that the defendant is "using a mark confusingly similar to a valid, protectablee trademark" that the plaintiff owns. *Brookfield Communications, Inc. v. W. Coast Entm't*, 174 F.3d 1036, 1046 (9th Cir. 1999).  Here, Plaintiff has sufficiently demonstrated that it owns the Arcuate, Tab, Shirt Tab, Two Horse, and 500 Series trademarks; that those trademarks are incontestable; and that they are famous.  Plaintiff has also sufficiently alleged that each of the defaulting Defendants has used one or more of Plaintiff's trademarks or variations of them, without Plaintiff's authorization.  (*See* FAC ¶¶37-38 & Ex. N (Samurai); ¶¶39-40 & Ex.O (Studio D'Artisan); ¶¶45-46 & Ex. R (Full Count); ¶¶47-48 & Ex. S (John Bull).)  Further, Plaintiff has sufficiently alleged that Defendants' use of those marks has created and continues to create a likelihood of confusion, mistake, and deception among consumers as to the source of the infringing products, and causes the public to falsely associate Plaintiff with the Defendants, thereby damaging Plaintiff.  (FAC ¶¶57-58.) Deeming these allegations as true, the undersigned finds that Plaintiff has established its claim for federal trademark infringement against Defendants.

*b.     Federal Unfair Competition (False Designation of Origin and False Description)*

Plaintiff next asserts a federal unfair competition claim against defendants based on false designation of origin and false description pursuant to 15 U.S.C. §1125(a).  This section provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which -
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be

11

>liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

In its First Amended Complaint, Plaintiff has alleged that Defendants are engaged in manufacturing, marketing, and selling garments that display symbols and devices that are confusingly similar to Plaintiff's Arcuate, Tab, Shirt Tab, Two Horse, and 500 Series trademarks. (FAC ¶¶37-40, 45-48.) Plaintiff has also alleged that Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship or approval of their infringing products, resulting in harm to Plaintiff. (FAC ¶58, 66.) Deeming these allegations as admitted, the undersigned finds that Plaintiff is entitled to judgment on its false designation of origin claim.

        *c.*     *Trademark Dilution*

Plaintiff's third claim against Defendants is for trademark dilution pursuant to 15 U.S.C. § 1125(c). To prove a dilution claim, a plaintiff must demonstrate that the mark used by the defendant is identical, or nearly identical, to the plaintiff's protected mark. *See Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 905 (9th Cir. 2002). Additionally, the plaintiff must prove that "(1) its mark is famous; (2) the defendant is marking commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark." *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 874 (9th Cir. 1999). Here, Plaintiff has demonstrated that Defendants are using marks that are identical or nearly identical to its Arcuate, Tab, Shirt Tab, Two Horse, and 500 Series trademarks. (FAC ¶¶37-40, 45-48.) Plaintiff has also shown that its mark is famous; that Defendants are making commercial use of the mark through their manufacturing and selling of clothing bearing the marks; that Defendants began manufacturing and selling their products after Plaintiff's marks became famous; and that Defendants' use of the marks presents a likelihood of diluting the distinctive value of Plaintiff's marks. (FAC ¶¶21, 37-40, 45-48.) The undersigned therefore finds that Plaintiff has set forth sufficient facts to recover on its federal trademark dilution

claim.

### d. California Dilution and Trademark Infringement

Plaintiff's fourth claim against Defendants is for dilution and trademark infringement under California Business & Professions Code Sections 14320, 14330, 14335, and 14340. Plaintiff's fifth and final claim against Defendants is for unfair competition pursuant to California Business & Professions Code Section 17200.

With respect to Plaintiff's trademark infringement and unfair competition claims under California law, courts apply the same likelihood of confusion test under applied to federal trademark infringement claims. *See Jada Toys, Inc. v. Mattell, Inc.*, 518 F.3d 628, 632 99th Cir. 2008); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Accordingly, the analysis set forth above under Plaintiff's federal trademark infringement claim applies equally to Plaintiff's trademark and unfair competition claims under California law. Plaintiff has therefore established that is entitled to relief against Defendants under its California trademark infringement and unfair competition claims. Likewise, the same analysis that governs federal dilution claims also applies to California dilution claims. *See Jada Toys, Inc.*, 518 F.3d at 633. Because Plaintiff has sufficiently established its dilution claim under federal law, it is also entitled to recover under California law.

### 3. The Sum of Money at Stake in the Action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of Defendants' actions. *Eitel*, 782 F.2d at 1471. Here, Plaintiff's Motion only requests injunctive relief to prevent further infringement by Defendants, not monetary damages. Thus, this factor favors entry of default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute concerning the material factors surrounding the case. As detailed above, Plaintiff has sufficiently alleged and has submitted exhibits demonstrating Defendants' use of its marks. It is unlikely Defendants would be able to present facts raising any dispute as to these allegations. Accordingly, this factor favors entry of default judgment.

#### 5. Possibility of Excusable Negligence

The sixth *Eitel* factor examines whether Defendants' failure to respond was the result of excusable neglect. As discussed above Plaintiff properly served Defendants with its First Amended Complaint in February 2008. Reviewing the record, Defendants have had ample time to appear and respond in this matter. There is no evidence to support a finding that their failure to defend or otherwise appear in this matter was the result of excusable neglect. Thus, this factor favors entry of default judgment.

#### 6. Policy for Deciding on the Merits

The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment. Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible. *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is warranted. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). As Defendants have failed to appear or respond in this matter, a decision on the merits is impossible. Thus, this factor favors entry of default judgment.

### D. Remedies

Plaintiff's motion requests entry of a permanent injunction against the defaulting Defendants.

#### 1. Permanent Injunction

Under the Lanham Act, injunctive relief may be granted upon reasonable terms according to principles of equity to remedy past and future violations of a plaintiff's trademark rights. 15 U.S.C. § 1116(a); *see also Century 21 Real Estate Corp.*, 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement.").

Here, Plaintiff has demonstrated that Defendants' infringement has caused and continues to cause irreparable harm to Plaintiff for which monetary damages are inadequate. Plaintiff has also asserted that, unless Defendants are restrained by the Court, they will continue to infringe on

14

Plaintiff's marks, resulting in further harm to Plaintiff. Plaintiff has therefore shown that it is entitled to entry of a permanent injunction enjoining Defendants from further infringements of its marks.

## IV.  CONCLUSION

Based on the foregoing analysis, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff Levi Strauss & Co.'s Motion for Default Judgment (Dkt. #47). The undersigned further **RECOMMENDS** that the Court **GRANT** Plaintiff's request for entry of a permanent injunction, consistent with the following language:

Defendants Samurai Co., Ltd.; Studio D'Artisan International Co., Ltd.; Full Count Co.; and John Bull Co., Ltd., their agents, employees, attorneys, successors, assigns, affiliates, and joint venturers and any person or persons in active concert or participation with any of them, and/or any person or persons acting for, with, by, through or under any of them are permanently enjoined from:

(a) manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods that display any words or symbols that so resemble Plaintiff's trademarks as to be likely to cause confusion, mistake or deception, on or in connection with any product that is not authorized by or for Plaintiff, including without limitation any product that bears Defendants' designs or any other similar approximation of Plaintiff's trademarks;

(b) using any, word, term, name, symbol, device or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of the Defendants' or their goods with Plaintiff or as to the origin of the Defendants' goods, or any false designation of origin, false or misleading description or representation of fact;

(c) further infringing the rights of Plaintiff in and to any of its trademarks in its LEVI'S® brand products or otherwise damaging Plaintiff's goodwill or business reputation;

(d) otherwise competing unfairly with Plaintiff in any manner; and

(e) continuing to perform in any manner whatsoever any of the other acts complained of

in Plaintiff's First Amended Complaint.

Pursuant to Fed. R. Civ. P 72(b)(2) a party may serve and file objections to this Report and Recommendation ten (10) days after being served.

**IT IS SO RECOMMENDED.**

Dated: September 11, 2009

_____
Maria-Elena James
United States Magistrate Judge